ALLEN, In re.
[See Ex parte General Assignee, Case No. 5,306.]

---

## Case No. 208.

### In re ALLEN.

[13 Blatchf. 271.][1]

Circuit Court, D. Vermont. March 16, 1876.

CONTEMPT — REFUSAL TO OBEY ORDERS OF REGISTER IN BANKRUPTCY — JURISDICTION—HABEAS CORPUS—ARREST IN ANOTHER STATE.

1. An uncontested order, made by a register in bankruptcy, in Vermont, that a bankrupt produce certain books and papers relating to his business, was disobeyed by him. On proof thereof, and on service of notice on the bankrupt, the district court for Vermont adjudged him to have been guilty of a contempt, and ordered that he deliver up the books and papers to the marshal, and pay the costs, and that, in default thereof, he be arrested by the marshal, or his deputy, and committed to jail to be safely kept until discharged by order of said court. The deputy of the marshal demanded the books and papers and costs from the bankrupt, in New Hampshire, which he refused to deliver or pay, and then the deputy arrested him in New Hampshire, and committed him to jail in Vermont. On a habeas corpus sued out by the bankrupt: *Held*, (1.) The order of the register was the order of the court, and, when it was disobeyed, it was proper to institute proceedings for contempt directly on such disobedience.

[Cited in Fischer v. Hayes, 6 Fed. Rep. 74; U. S. v. Anon., 21 Fed. Rep. 770.]

2. That it was proper to direct that the bankrupt be committed until discharged by order of the district court.

[Cited in Fischer v. Hayes, 6 Fed. Rep. 74.]

---

[1][Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

3. That the arrest in New Hampshire was illegal, and the imprisonment in Vermont, in pursuance of such arrest, was, therefore, illegal, although the warrant of arrest was valid.

[Application by Horatio N. Allen for a writ of habeas corpus.]

Romeo H. Start and Levi Underwood, for relator.

SHIPMAN, District Judge. From the return of the jailer it appears, that the relator, Horatio N. Allen, is held in custody upon a warrant which issued from the district court of the United States for the district of Vermont. The warrant or order of commitment recites, that the relator is a bankrupt, and was legally notified to appear, and did appear, before a register in bankruptcy, to submit to an examination under the provisions of the bankrupt act; that said examination disclosed that Allen had kept entries of his business transactions upon "diaries," which diaries and other memoranda and papers relating to his business it was necessary should be in the possession of the assignee, in order that he might obtain a full knowledge of the property of the bankrupt; that the assignee demanded said papers and books from the bankrupt, and procured an order to be made by the register, commanding said Allen to produce said papers and books, which order he neglected to obey; that, thereupon, the assignee brought a petition before the district court, praying that the bankrupt be proceeded against for contempt, and be ordered to surrender said books and papers to the petitioner; that an order was issued from the district court to said Allen, directing him to show cause why he should not be dealt with for contempt, and should not surrender said papers; that said order to show cause was duly served, and, said petition having been continued from time to time, at the request of the bankrupt, or by agreement of the parties, on the last adjourned day the petitioner appeared and the bankrupt appeared not; and that, upon the hearing, the bankrupt was adjudged guilty of contempt, and was commanded to deliver up the books and papers to the marshal, and pay the costs, and, upon neglect or refusal to comply with said order, the marshal or his deputy was commanded to take the body of said Allen, and him commit to the keeper of the jail in Chittenden county, to be safely kept until discharged by order of said court. The return of the deputy marshal upon the warrant is to the effect, that he demanded of the said Allen, in the state of New Hampshire, said books and papers, and said costs, which he refused to deliver or pay, whereupon he was arrested and committed to the jail in Chittenden county, in the state of Vermont.

It is contended that the return of the jailer is insufficient, upon three grounds: 1st. It appears upon the face of the warrant or order of commitment, that the contempt of which the relator was adjudged guilty, consisted in not obeying an order of the register, which order was not an order of the court; 2d. That the warrant directed that the bankrupt should be imprisoned until he should be discharged by order of court, and that his imprisonment does not expire by effluxion of time, or upon the performance of any act, but is limited only by the pleasure of the court; 3d. That the relator was unlawfully arrested in the state of New Hampshire, by a Vermont officer, and was thence taken to jail in Vermont.

(1) Upon the first point it is urged that the statute of the United States (Rev. St. § 725) defines contempt to be misbehavior in the presence of the court, or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of the court in their official transactions, and disobedience or resistance to any lawful order or command of the court; that an order of the register is not an order of a court; and that, prior to the adjudication for contempt, no order had been made by a court in the premises. By the bankrupt act, the several district courts of the United States are constituted courts of bankruptcy, and it is the duty of the judges of the district courts in the several districts to appoint registers in bankruptcy to assist the judge in the performance of his duties under the act. The register is empowered to despatch such part of the administrative business of the court, and such uncontested matters as shall be defined in general rules and orders, or as the district judge shall in any particular matter direct. The register has all powers vested in the district court, for the summoning and examination of persons and witnesses, and for requiring the production of books, papers, and documents, except the power of commitment. It is impossible that the laborious administrative business of a bankruptcy court can be performed by one judge. The intricate work connected with the settlement of bankrupt estates requires the time and attention of other persons. The statute has, therefore, empowered him to appoint persons, styled registers, to assist him in the performance of his duties. The powers of the register consist, in general, in the discharge of the administrative business of the bankruptcy court, and in passing such orders relative to the settlement of the estate as may be uncontested. Within the scope of their authority, the registers are not only officers of the court, but, in uncontested matters, act in lieu of the judge. Within this scope their acts are the acts of the bankruptcy court, and their uncontested orders are the orders of the court. Whenever, therefore, a bankrupt violates an order which the register has the power to make, and the making of which the bankrupt has not contested, and in regard to which he has not desired a refer-

ence to the district judge, a violation of such an order is a violation of the order of the bankruptcy court. The register cannot punish for a violation of his order. That power is reserved to the district judge. But it cannot be implied that, for a noncompliance with the uncontested order of the register, there is no power of punishment, and that the only course is to obtain a re-enactment of the order from the district judge, for a violation of which second order a punishment may be inflicted. The statute which placed so large a part of the details of the settlement of estates in the hands of the registers, evidently intended that their uncontested acts in reference to these details were the acts of the court of bankruptcy. Under this theory of the law the practice of the district courts has been to enforce the unobeyed orders of the register by proceedings in contempt, which are instituted directly upon a neglect to comply with his order. In re Gettleston, [Case No. 5,373;] In re Speyer, [Id. 13,239.]

(2.) When the contempt consists of a violation of the order of the court, and is a contempt not committed in its presence, and the statute does not prescribe the form of the order of commitment, the defendant may be imprisoned until he be discharged by order of court, or until further order of court. Green. v. Elgie, 8 Jur. pt. 1, p. 187, per Denman, C. J.; opinion of Ch. J. Kent in Re Yates, 4 Johns. 317; [Yates v. Lansing,] 9 Johns. 395.

(3.) The arrest of the relator by the deputy marshal was without his precincts and within the state of New Hampshire. The language of the officer's return is: "At Carroll, in the district of New Hampshire, I served this warrant by demanding, &c., whereupon I arrested his body, read the warrant in his hearing, and, on the same day, I committed him to the keeper of the common jail at Burlington, in the county of Chittenden, in the district of Vermont." The arrest in New Hampshire was not justified by the order of the district court, and, the arrest having been illegal, the subsequent imprisonment in the state of Vermont, in pursuance of the original arrest, cannot be justified. When the original arrest is unlawful, the detention is improper, although the warrant under which the improper arrest is made, is valid. The fact that the officer had power to arrest the bankrupt, after he was brought within the state of Vermont, is immaterial, inasmuch as that power was improperly obtained. The principle is thus declared by Lord Holt, in Luttin v. Benin, 11 Mod. 50: "If a man is wrongfully brought into a jurisdiction, and there lawfully arrested, yet he ought to be discharged, for no lawful thing, founded upon a wrongful act, can be supported." The general subject of the validity of the acts of sheriffs over persons or property, in cases where the possession of the person or property was improperly obtained by the officer, is very elaborately discussed in Hooper v. Lane, 6 H. L. Cas. 443, and in Ilsley v. Nichols, 12 Pick. 270. In the latter case, Ch. J. Shaw, after reviewing the authorities, concludes as follows: "These cases seem to establish the general principle, that a valid and lawful act cannot be accomplished by unlawful means, and, whenever such unlawful means are resorted to, the law will interpose and afford some suitable remedy, according to the nature of the case, to restore the party injured by means of these unlawful means, to his rights." I refer also to Percival v. Stamp, 9 Exch. 167; Barratt v. Price, 9 Bing. 566; Mandeville v. Guernsey, 51 Barb. 99; Hill v. Goodrich, 32 Conn. 589. The relator having been improperly arrested by the deputy marshal beyond his precincts, although upon a warrant which was valid authority for an arrest within his precincts, the detention is invalid, and the relator is entitled to a discharge.